**Supreme Court of Pennsylvania**

**Court of Common Pleas**

**Civil Cover Sheet**

**CHESTER** County

| For Prothonotary Use Only: |
| --- |
| Docket No: |
| **2026-02968-TT** |

Filed and Attested by
PROTHONOTARY
01 Apr 2026 09:44 AM
M. SCHIAVONI

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action**

✓ Complaint          __ Writ of Summons          __ Petition

__ Transfer from Another Jurisdiction          __ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
| --- | --- |
| **WHITNEY  MCCLINTOCK** | **GIVEBUTTER, INC.** |

| Are money damages requested?  __ Yes  ✓ No | Dollar Amount Requested: __ Within arbitration limits |
| --- | --- |
| | (check one)  ✓ outside arbitration limits |

| Is this a Class Action Suit?  ✓ Yes  __ No | Is this an MDJ Appeal?  __ Yes  ✓ No |
| --- | --- |

Name of Plaintiff/Appellant's Attorney: Justin J Swofford

__ Check here if you have no attorney(are a Self-Represented [Pro Se] Litigant)

## SECTION B

**Nature of the Case:**    Place "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE.*
If you are making more than one type of claim, check the one that you consider most important.

| TORT *(do not include Mass Tort)* | CONTRACT *(do not include Judgments)* | CIVIL APPEALS |
| --- | --- | --- |
| __ Intentional | __ Buyer Plaintiff | Administrative Agencies |
| __ Malicious Prosecution | __ Debt Collection: Credit Card | __ Board of Assessment |
| __ Motor Vehicle | __ Debt Collection: Other | __ Board of Elections |
| __ Nuisance | __ Employment Dispute: | __ Dept. of Transportation |
| __ Premises Liability | Discrimination | __ Statutory Appeal: Other |
| __ Product Liability *(does not include mass* | __ Employment Dispute: Other | __ Zoning Board |
| *tort)* | __ Other | __ Other: |
| __ Slander/Libel/Defamation | | |
| ✓ Other: | | |

| MASS TORT | REAL PROPERTY | MISCELLANEOUS |
| --- | --- | --- |
| __ Asbestos | __ Ejectment | __ Common Law/Statutory Arbitration |
| __ Tobacco | __ Eminent Domain/Condemnation | __ Declaratory Judgement |
| __ Toxic Tort - DES | __ Ground Rent | __ Mandamus |
| __ Toxic Tort - Implant | __ Landlord/Tenant Dispute | __ Non-Domestic Relations |
| __ Toxic Waste | __ Mortgage Foreclosure: Residential | __ Restraining Order |
| __ Other: | __ Mortgage Foreclosure: Commercial | __ Quo Warranto |
| | __ Partition | __ Replevin |
| **PROFESSIONAL LIABILITY** | __ Quiet Title | __ Other: |
| __ Dental | __ Other: | |
| __ Legal | | |
| __ Medical | | |
| __ Other Professional | | |

*2026-02968-TT*

| **Chester County** **Court of Common Pleas** **Cover Sheet** | Docket No: **2026-02968-TT** |
|---|---|

| Plaintiff(s): (Name, Address) **WHITNEY MCCLINTOCK** 551 COLUMBIA AVENUE   PHOENIXVILLE, PA  19460 | Plaintiff's/Appellant's Attorney(circle one) (Name, firm, address, telephone and attorney ID#) **Justin J Swofford** 2023504783 KALIELGOLD PLLC attorney ID#: 334768 1100 15th Street NW, 4th Floor, Washington, DC 20005, US |
|---|---|
| Defendant(s): (Name, Address) **GIVEBUTTER, INC.** C/O THE CORPORATION TRUST CO CORP TRUST CENTER 1209 ORANGE STREET WILMINGTON, DE  19801 | Are there any related cases? Please provide case nos. |

**Defendants who are proceeding without counsel are strongly urged to file with the Prothonotary a written statement of an address AND a telephone number at which they can be reached**

Commencement of Action (if applicable): ___ Agreement for an Amicable Action ___ Motion to Confirm Arbitration Award
Notice of Appeal

If this is an appeal from a Magisterial District Judgement, was appellant ___ Plaintiff or ___ Defendant in the original action?

Jury Trial Demanded ✓ Yes      No

Nature of case if not on previous cover sheet - Please choose the most applicable

| | |
|---|---|
| ___ Annulment | ___ Writ of Certiorari |
| ___ Custody - Conciliation Required | ___ Injunctive Relief |
| ___ Custody - Foreign Order | ___ Mechanics Lien Claim |
| ___ Custody - No Conciliation Required | ___ Issuance of Foreign Subpoena |
| ___ Divorce - Ancillary Relief Request | ___ Name Change |
| ___ Divorce - No Ancillary Relief Requested | ___ Petition for Structured Settlement |
| ___ Foreign Divorce | |
| ___ Foreign Protection from Abuse | |
| ___ Paternity | |
| ___ Protection from Abuse | |
| ___ Standby Guardianship | |

| **Arbitration Cases Only** | **Notice of Trial Listing Date** |
|---|---|
| Arbitration Date   mm/dd/yyyy Arbitration Time   hh:mm:ss Defendants are cautioned that the scheduling of an arbitration date does not alter the duty of the defendant to respond to the complaint and does not prevent summary disposition form occurring prior to the arbitration date. This matter will be heard by a Board of Arbitrators at the time and date specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial *de novo* on appeal from a decision entered by a judge. | Pursuant to C.C.R.C.P. 249.3, if this case is not subject to compulsory arbitration it will be presumed ready for trial twelve (12) months from the date of the initiation of the suit and will be placed on the trial list one (1) year from the date the suit was filed unless otherwise ordered by the Court. To obtain relief from automatic trial listing a party must proceed pursuant to C.C.R.C.P. 249.3(b), request an administrative conference and obtain a court order deferring the placement of the case on the trial list until a later date. |

**File with:** Chester County Justice Center, Prothonotary Office, 201 W. Market St., Ste. 1425, PO Box 2746, West Chester, PA 19380-0989

*2026-02968-TT*

| These cover sheets must be served upon all other parties to the action immediately after filing. |
| --- |
| Submit enough copies for service. |

*2026-02968-TT*

## COURT OF COMMON PLEAS OF CHESTER COUNTY
## CIVIL ACTION

| | |
|---|---|
| WHITNEY MCCLINTOCK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GIVEBUTTER, INC.,<br><br>Defendant. | Civil Action No. _____<br><br>Type of Pleading:<br><br>**CLASS ACTION COMPLAINT**<br><br>Counsel of Record<br><br>Justin J. Swofford (PA ID #334768)<br><br>**KALIELGOLD PLLC**<br>1100 15th Street NW, 4th Floor<br>Washington, DC 20005<br>Telephone: (202) 350-4783<br>Email: jswofford@kalielgold.com<br><br>**TRIAL BY JURY DEMANDED<br>AS TO ALL TRIABLE COUNTS** |

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE:

**Lawyer Referral and Information Service<br>Chester County Bar Association<br>15 West Gay Street<br>West Chester, PA 19380<br>(610) 429-1500**

2

2026-02968-TT

Plaintiff, individually and on behalf of all others similarly situated, alleges against Defendant Givebutter, Inc. ("Givebutter" or "Defendant") as follows:

## NATURE OF THE ACTION

1.      Americans are a generous people, giving billions each year to charitable causes they support. In recent years, for-profit software companies like Givebutter have identified a business opportunity in all this generosity: acting as a middleman between donors and charitable organizations—but furtively charging excessive and undisclosed fees on charitable donations.

2.      The opportunity to collect small add-on fees from every small donation a charity gets is massively profitable; as one indication, Givebutter recently received a $50 million private equity investment to expand its business. *See* Max Friedman, *A $50M investment in the future of Givebutter*, Givebutter (Apr. 22, 2024), https://givebutter.com/blog/givebutter-receives-50m-investment.

3.      While Plaintiff and other reasonable consumers are generous, they have no interest in or intention of enriching a private company like Givebutter as part of their charitable donations. But, unwittingly, and because of Givebutter's website design tricks and other deceptions, that is exactly what occurs.

4.      This action is brought to protect donors who gave money in good faith to support causes they care deeply about, only to have additional funds diverted to Givebutter through a deceptive website interface design in which Givebutter automatically adds "Tips" and "processing fees" to donations without affirmative consumer assent.

5.      Indeed, each time a customer makes an online donation through its website, Givebutter applies *two separate negative options*, automatically adding on supposedly optional

3

fees to charitable donations and thus jacking up the cost of each charitable contribution. Non-conspicuous negative options are *per se* deceptive according to the Federal Trade Commission.

6.  Givebutter's negative options are deceptive, as they are designed to be hard for consumers to find and remove.

7:  Moreover, Givebutter's add-on fees and "Tips" are deceptively misdescribed and their disclosure is delayed until very late in the checkout process for charitable donations.

8.  In sum, Givebutter employs dark patterns—including preselected, automatically added "Tip" and "processing fee" amounts, misleading interface design, and deceptively named and described add-on fees—to extract additional money from donors who believe they are donating only to the intended charitable recipient.

9.  Charitable donations are uniquely personal and trust-based transactions. Donors act quickly, often emotionally, and with the reasonable expectation that their money will go where they intend—toward helping others, not toward undisclosed or preselected middleman fees like those charged by Givebutter.

10.  As a result of Givebutter's practices, Plaintiff and Class members paid money they did not knowingly authorize, conferring an improper financial benefit on Givebutter.

11.  This case seeks to restore donor choice, ensure honesty and a free and fair market for charitable transactions, and to prevent platforms like Givebutter from quietly profiting from Americans' generosity through design practices that foist additional costs on consumers.

12.  Plaintiff seeks restitution, injunctive relief, and all other available remedies to stop Givebutter's deceptive conduct and return ill-gotten gains.

## PARTIES

13.  Plaintiff is a resident and citizen of Phoenixville, Pennsylvania, who has made

4

2026-02968-TT

charitable donations on websites that offer Defendant's widget.

14.    Defendant is a Delaware corporation with its principal place of business in Wilmington, Delaware. Defendant operates an online fundraising and donation platform used nationwide. Defendant's platform processes donations and derives revenue from "Tips" added to those donations.

## JURISDICTION AND VENUE

15.    The Court has jurisdiction over this matter pursuant to 42 P.S. § 931. The amount in controversy exceeds the amount requiring arbitration pursuant to the rules of this Court.

16.    This Court has jurisdiction over Defendant because Defendant regularly and systematically conducts business and provides payment processing services in this County to customers in this County, including to Plaintiff and Class members.

17.    Venue is proper in this County pursuant to Pa. R. Civ. P. 2179 because Defendant regularly conducts business in this County, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this County.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.    Givebutter's Business Model

18.    Givebutter advertises to charities that it offers "free fundraising at your fingertips."

19.    Charities who choose to sign up with Givebutter are provided website integration features, whereby any consumer hoping to make an online donation to a charity is directed to a Givebutter widget to do so.

20.    For example, Givebutter's donation form is a widget that charitable organizations can implement directly on the organization's own website:

5



21. Givebutter also offers nonprofit organization fundraising pages, fundraising event payment processing, and auction payment processing.

22. However, consumers who attempt to make a charitable donation online with a charity that uses Givebutter's services are provided no notice that, when they do so, they are actually being directed to a widget or website controlled or designed by a third party—namely, Givebutter.

23. Givebutter tells nonprofits that "[m]ost donors choose to cover" the processing fees Givebutter charges for its services when the donors are asked whether they wish to do so at the point of sale, "which means the average Givebutter campaign keeps nearly all funds raised."



6

24.     But Givebutter neglects to inform these nonprofits that the reason "most donors" cover these processing fees is because those donors are never given any reasonable choice whether to pay the fees or not, as described herein, rendering the fees not actually "optional."

25.     Givebutter also acts as the "payment processor" for charitable organizations, providing options by which donors may pay and providing options for nonprofits to withdraw funds. *See* Nonprofit payment processing, Givebutter, https://givebutter.com/nonprofit-payment-processing (last accessed Mar. 26, 2026).

## II.     Givebutter's Deceptive Screen Flow Features Two Separate Negative Options

26.     Once directed to a Givebutter designed and controlled widget or website, consumers attempting to make a charitable donation are immediately exposed to a series of dark patterns, deceptive design features, and outright misrepresentations—all designed to extract extra money out of unwitting donors.

27.     During the donation checkout process, Givebutter automatically selects or adds a "processing fee" to each donation.

28.     As shown below, the automatically added processing fee is designed to be easy for donors to overlook, and Givebutter then forces consumers to hunt around for a way to remove the fee—then obscures the method for removing such a fee.

29.     Givebutter does the same thing with what it calls "Tips," automatically adding this additional fee to each donation in small font, and again forcing consumers to hunt around for a way to remove the "Tip" from their transaction—then obscuring the method for removing it.

30.     At no point does Givebutter require donors to affirmatively opt in to "tipping" or paying processing fees through an unchecked box or the ability to provide express consent. It instead foists these fees on consumers without giving them the ability to provide affirmative assent.

7

*2026-02968-TT*

31. By automatically adding these fees, then forcing consumers to hunt around for obscure ways to remove them, Givebutter ensures that donors are deceived into believing these additional charges are mandatory—or even part of the donation itself.

32. On information and belief, Givebutter designs the interface presented by charities to donors regarding the Tips and processing fees, including the name of the fees, the time at which the fees are first mentioned during the checkout process, the time at which the fee amounts are added to the price total, and the pre-selection of the checkbox or toggle button presented during the online checkout process. On information and belief, Givebutter also uses sales tactics that pressure charities into pre-selecting checkboxes or toggles at checkout that automatically add Tips and processing fees by default.

33. Even worse, on information and belief, Givebutter also requires nonprofits to keep the "Tips" option on its widget toggled on by default to use Givebutter's platform free of charge. On information and belief, Givebutter is aware that, by programming its widget to automatically opt in donors to its Tips and processing fees and other similar fees, most donors will unknowingly pay these fees. Givebutter does this for a simple reason: it knows that if its widgets were programmed to offer truly *optional* fees (requiring an opt-in from donors), the donors would not choose to pay these fees and enrich a private, for-profit company.

34. Here is how Givebutter's deception works, taking an example from online donations made to charitable organization "Ann's Heart," which Plaintiff has donated to. (Ann's Heart is a meaningful organization that works to provide emergency shelter, support basic needs, address food insecurity, and empower and educate residents of Phoenixville, Pennsylvania.)

8

*2026-02968-TT*

35.    When a donor initiates an online donation to "Ann's Heart," they are asked to select a donation amount which excludes the fees Givebutter will eventually add later in the checkout process:



36.    After selecting the donation amount, the donor is asked if they want to make a monthly recurring donation instead:



37.    After the donor decides whether they want to stick with the single contribution or make a monthly contribution, the donor is confronted with the checkout screen, which is riddled with deception.

9

*2026-02968-TT*

38.    First, in tiny font, the checkout screen automatically adds a so-called "processing fee" to all donations:



39.    In truth, the "processing fee" is optional, *but Givebutter never once informs consumers of this fact.*

40.    In other words, having automatically opted consumers into the supposedly optional processing fee, Givebutter then proceeds to obscure the fact that the fee is optional—nowhere providing on the checkout screen a disclosure that the fee is optional or an indication that the fee can be removed.

41.    Indeed, any ability to *remove* the "processing fee" is hidden. A consumer would have to click on the inconspicuous word "edit," read through a deceptive disclaimer, then un-select a checkbox to remove the supposedly optional processing fee:

10

*2026-02968-TT*



42.    Even the description of the processing fee, itself hidden, is deceptive, stating: "[p]ayment processors take a cut of each transaction. With Givebutter, you have the option to cover these fees so 100% of your gift can go to the cause you care about." But Givebutter IS the payment processor. In fact, that is precisely what it tells charities when marketing its services to them:



43.    Why go to all this trouble to add a processing fee on donations, rather than just asking donors to cover purported processing costs? Clearly, this process is designed to ensure

11

consumers pay a fee they would not otherwise pay—and to ensure consumers do not and cannot remove the processing fee.

44.    On the same checkout page, far to the right and in much smaller, lighter font than the prominently displayed amount of the donation itself, Givebutter automatically adds a "Tip" for itself.

45.    In tiny font, Givebutter states that a Tip is optional, but there is no indication the Tip is actually added to the donation *automatically* and will become part of the total paid to Givebutter without further action from the consumer.

46.    In other words, having automatically opted consumers into the supposedly optional Tip, Givebutter then proceeds to obscure the fact that the fee must be affirmatively removed to be avoided—nowhere providing on the checkout screen a disclosure that the Tip is optional or an indication that the fee must be removed.

47.    Indeed, any ability to *remove* the "Tip" is hidden. A consumer wishing to do so would have to figure out that the tiny, grey, downward-pointing triangle near the automatically added "Tip" can change the "Tip" amount, then repeatedly click that tiny triangle to manually set the value to zero.

48.    Due to the small font and the unexpected nature of the automatically added fee, most consumers do not even notice the added Tip. And the consumers that do notice the added Tip are misled by the description. Givebutter describes the Tip as "[a]n optional tip [that] allows Ann's Heart to use Givebutter's 100% free fundraising platform and keeps it running for all nonprofits." But this is simply not true for two reasons.

49.    First, on information and belief, the Tip for Givebutter is pure profit entirely untethered to Ann's Heart's ability to collect donations.

12

50.    Second, the Tip is redundant even by Givebutter's own deceptive description: it purportedly serves the same function as the also-automatically-added "Processing Fee": to cover the purported costs of processing charitable donations.

### III.    Negative Options are Per Se Deceptive

51.    Defendant's "Tips" and "processing fees" are precisely the type of "Junk Fees" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, Mar. 5, 2024, available at https://bidenwhitehouse.archives.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/ (footnotes omitted).

52.    As the FTC said recently in its effort to combat Junk Fees:

> Many consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, Oct. 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

53.    In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be

13

2026-02968-TT

provided before the consumer makes the decision to buy—for example, before the consumer "add[s] to shopping cart." Fed. Trade Comm'n, *.com Disclosures: How to Make Effective Disclosures in Digital Advertising* at ii, 14, Mar. 2013, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

54.    As the FTC notes, "[f]or years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." Fed. Trade Comm'n, *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers,* Sept. 15, 2022, available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers.

55.    The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 n.46 (emphasis added). Similarly, an item automatically added to the cart, without having done anything whatsoever to add that item, does not constitute affirmative consent.

56.    At bottom, negative options are part of an "unfortunate trend in Internet scams" "which trick consumers into buying things they did not intend to buy." Consumer Protection and the Law, November 2024 Update, Dee Pridgen and Jolina C. Cuaresma § 13:14.

14

IV.    **Tips and Processing Fees are Misnamed, Misdescribed Junk Fees**

57.    Givebutter deceptively characterizes the processing fee and the Tip, as described above, and obscures the fact that consumers need to opt out of them to avoid them.

58.    Givebutter delays any mention of the fees until after consumers have selected their donation amount.

59.    The processing fees and Tips are pure profit for Givebutter and not at all related to the actual costs of processing charitable donation payments.

60.    On information and belief, the cost for Givebutter to process payments is well below the amounts passed through to donors as processing fees, and Givebutter illegally pockets the difference as profit.

61.    As for debit card payments, the fees that a servicer like Givebutter must pay to process debit card transactions average about $0.34 per transaction, according to the Federal Reserve. *See* Federal Reserve, *Average Debit Card Interchange Fee by Payment Card Network*, https://www.federalreserve.gov/paymentsystems/regii-average-interchange-fee.htm (last accessed Mar. 26, 2026).

62.    Merriam-Webster defines a tip as "a gift or a sum of money tendered for a service performed or anticipated." *See* https://www.merriam-webster.com/dictionary/tip (last accessed Mar. 26, 2026). But, as described herein, donors, charitable as they might be, never intended to give third-party payment processors like Givebutter a "gift." Donors are never meaningfully informed that any money they are giving as a part of their charitable transaction actually goes to Givebutter.

63.    Indeed, numerous complaints on the Better Business Bureau's website confirm that donors are duped into paying Givebutter fees that they did not want or need to pay and that

15

*2026-02968-TT*

consumers never even understood that their transaction on the charity's website had anything to

do with Givebutter:[1]

> Bait and switch? I thought I was donating money to help veterans. But then on my credit card statement is a charge to some Givebutter website. I was never taken to a web page that said I was donating to this company. I never would have considered doing so if they had. The website I thought I was donating money to never stared that this would be taking place. They could have created their own account with [] and stated that they would be running my donation through them. BAIT AND SWITCH.

> I would have given ZERO IF I could. No transparency. There was a default 15% tip on my charitable contribution that was automatically added and had to be disputed since I didnt agree to tip anyone. They imply that the tip is going to the charity but it goes to the platform despite the fact that they claim they are providing their service to the charity without fee. Total SCAM! Consumer Fraud. Hurts consumers and legitimate charities. I will never make a donation on this platform! A fee should also not be a percentage of the donation. Can you imagine if a credit card tried this stunt.?

> What an absolute scam. Hidden tip charge can catch even the most careful donator.

> By default the 15% tip checkbox is selected, unless user explicitly deselects. Which means by default they hope to charge 15% of your total raised fund. I will notify the organizer to be aware of this issue.

> I'd like to give a zero rating!! Give Butter should be ashamed. We are a non-profit and had our annual fundraiser. Loyal donors placed winning bids for a silent auction, entered zero for a tip, and were shocked to find large tips were charged by Good Butter. This is a shameful business practice, especially trying to take advantage of donors for a non-profit.

> Paid money through Givebutter for a charity event and left the tip amount blank. After processing Givebutter added a [REMOVED] tip amount. Givebutter claims they don't require a tip for its use. I started researching Givebutter and have read many reviews that are bad. This business needs to be investigated considering being tied to fund raising.

---

[1] https://www.bbb.org/us/tx/austin/profile/marketing-software/givebutter-inc-0825-1000210184/customer-reviews.

16

64. Donors presented with Givebutter's widget are not engaging in arms-length commercial transactions. They are attempting to help friends, schools, families in crisis, medical emergencies, and charitable organizations.

65. Donations are often made under time pressure, emotional stress, or a sense of urgency such as responding to a personal story, emergency, auction event, or community appeal.

66. In this context, donors reasonably rely on Givebutter to present charges clearly and honestly, and to require explicit consent before diverting any portion of their donation away from the intended cause.

67. Givebutter's conduct also violates the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401–05 ("ROSCA"). Specifically, Givebutter used "negative option" sales "[that] took advantage of consumers' expectations." *Id.* § 8401(8). Moreover, Givebutter violated ROSCA by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. *Id.* §§ 8403(1), (2).

## V.  Plaintiff's Experience

68. On December 19, 2023, Plaintiff donated $20.00 to Ann's Heart.

69. However, due to Defendant's widget, Plaintiff's purchase also included a $0.91 processing fee and a $3.00 Tip charged by Givebutter that was automatically and surreptitiously added to her cart without her affirmative consent.

70. Plaintiff did not know the processing fee or Tip for Givebutter existed or that it could have been removed at the time of her purchase.

17

2026-02968-TT

71. Plaintiff would not have chosen to pay Givebutter's Tip or processing fee if she had known it was optional.

## CLASS ACTION ALLEGATIONS

72. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 1701, *et seq.* of the Pennsylvania Rules of Civil Procedure. This action satisfies all applicable numerosity, commonality, typicality, fairness, efficiency, and adequacy requirements of the Pennsylvania Rules of Civil Procedure. The proposed Classes are defined as:

Tip Fee Class: All persons nationwide who, within the applicable statute of limitations, paid Givebutter a preselected Tip.

Processing Fee Class: All persons nationwide who, within the applicable statute of limitations, paid Givebutter a preselected processing fee.

73. Plaintiff also brings these claims on behalf of a Pennsylvania subclass.

74. Excluded from the Classes are Givebutter, its parents, subsidiaries, affiliates, officers and directors, any entity in which Givebutter has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

75. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add subclasses, if necessary, before this Court determines whether class certification is appropriate.

76. The members of the Classes are so numerous that joinder is impractical. The Classes consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Givebutter's records.

77. The claims of Plaintiff are typical of the claims of the Classes she seeks to represent in that Plaintiff, like all members of the Classes, was charged improper and deceptive fees as

18

*2026-02968-TT*

alleged herein and was damaged by Givebutter's misconduct. Furthermore, the factual basis of Givebutter's misconduct is common to all members of the Classes and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes. Givebutter has no unique defenses that would apply to Plaintiff and not the Classes.

78.    There are numerous questions of law and fact common to the Classes that predominate over any questions affecting only individual members of the Classes. Those questions include, but are not limited to, the following:

a.    Whether Givebutter engaged in conduct that prevented or hindered the performance of the contract between charitable organizations and the Classes;

b.    Whether Givebutter's conduct misled or had the tendency to mislead consumers;

c.    Whether Givebutter engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.    Whether Givebutter's conduct constitutes violations of the laws asserted;

e.    Whether Plaintiff and members of the Classes were harmed by Givebutter's misrepresentations;

f.    Whether Givebutter was unjustly enriched;

g.    Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

h.    Whether an injunction is necessary to prevent Givebutter from continuing to engage in the wrongful conduct described herein.

79.    Plaintiff's claims are typical of the claims of other members of the Classes, in that they arise out of the same wrongful fee policies and practices. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Classes.

19

80.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions involving the imposition of junk fees. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

81.    Plaintiff is not aware of any litigation already commenced by members of the Classes against Givebutter involving the same issues.

82.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Classes' claims is small relative to the complexity of the litigation, and due to the financial resources of Givebutter, no member of the Classes could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Givebutter's misconduct will proceed without remedy.

83.    Even if members of the Classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

84.    Chester County is an appropriate forum for the litigation of these claims because Plaintiff resides in this County.

85.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action

20

that would preclude its treatment as a class action.

86. Givebutter has acted or refused to act on grounds generally applicable to each of the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

87. All conditions precedent to bringing this action have been satisfied and/or waived.

## COUNT I
## VIOLATIONS OF PENNSYLVANIA'S
## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### 73 P.S. §§ 201-1, *et seq.*
### (On behalf of Plaintiff and the Pennsylvania Subclass)

88. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

89. The general purpose of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") is to protect the public from fraud and unfair and deceptive business practices. The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property … as a result of the use or employment by any person of a method, act or practice declared unlawful by" the UTPCPL. 73 P.S. § 201-9.2(a).

90. This is a claim for violations of 73 P.S. § 201-2(4), which states that unfair or deceptive acts or practices include: "Engaging in … fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Id.*

91. At all times relevant hereto, Givebutter conducted trade and commerce within the meaning of the UTPCPL.

92. Plaintiff and the Class are "persons" as defined by the UTPCPL.

93. Givebutter has made, and continues to make, deceptive, false and misleading statements to donors, including Plaintiff and the Class, by (1) automatically and surreptitiously

21

*2026-02968-TT*

adding Tips and processing fees to consumers' carts without affirmative consent; and (2) misrepresenting the purpose of Tips and processing fees as an extra donation to the charity of choice.

94.    Givebutter's conduct as described herein is also fraudulent and deceptive under the UTPCPL insofar as Givebutter violates ROSCA by using "negative option" sales "[that] took advantage of consumers' expectations" and by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. 15 U.S.C. §§ 8401(8), 8403(1), (2).

95.    Plaintiff and the Class justifiably relied upon Givebutter's deceptive, false and misleading representations concerning Tips and processing fees in making their decision to donate to their charity of choice. Plaintiff and Class members would not have paid Defendant's Tips and processing fees absent Defendant's misrepresentations and omissions, which include, but are not limited to, its deceptive interface design.

96.    Givebutter's conduct as set forth herein constitutes an unconscionable, unfair, and deceptive commercial practice.

97.    As a direct and proximate result of these unfair and deceptive practices, Plaintiff and the Class have been injured, and have suffered and will continue to suffer real damages.

98.    As a result of the harm caused by Givebutter's violation of the UTPCPL, Plaintiff and the Class are entitled to recover compensatory damages, treble damages, and an award of attorneys' fees and costs, pursuant to the UTPCPL.

22

2026-02968-TT

## COUNT II
## VIOLATIONS OF THE
## DELAWARE UNIFORM DECEPTIVE TRADE PRACTICES ACT
### 6 Del. C. §§ 2531-36
### (On behalf of Plaintiff and the Classes)

99.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

100.    Givebutter is, and at all relevant times was, a "person" engaged in business in Delaware as defined in the Delaware Uniform Deceptive Trade Practices Act ("DTPA"), 6 Del. C. § 2531(5), including in its payment processing services.

101.    By (1) automatically and surreptitiously adding Tips and processing fees to consumers' carts without affirmative consent; and (2) misrepresenting the purpose of its Tips and processing fees as an extra donation to the charity of choice, Givebutter has engaged in deceptive trade practices in violation of the DTPA. 6 Del. C. § 2532.

102.    Givebutter's conduct as described herein also constitutes conduct which creates a likelihood of confusion and misunderstanding in violation of 6 Del. C. § 2532(12).

103.    Givebutter's conduct as described herein is also fraudulent and deceptive under the DTPA insofar as Givebutter violates ROSCA by using "negative option" sales "[that] took advantage of consumers' expectations" and by using a negative option feature that (1) did not provide text that clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; and (2) did not obtain the consumer's express informed consent before charging the consumer's credit card, debit card, bank account, or other financial account for products or services through such transaction. 15 U.S.C. §§ 8401(8), 8403(1), (2).

104.    Plaintiff and the Class justifiably relied upon Givebutter's deceptive, false and

23

misleading representations concerning Tips and processing fees in making their decision to donate to their charity of choice. Plaintiff and Class members would not have paid Defendant's Tips and processing fees absent Defendant's misrepresentations and omissions, which include, but are not limited to, its deceptive interface design.

105. Givebutter's actions constituted willful violations of the DTPA because it knew or should have known that its conduct was prohibited by the DTPA.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT
### (On behalf of Plaintiff and the Classes)

106. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

107. Plaintiff and the Class have contracted with charities for the purpose of donating funds to those charities.

108. Givebutter had knowledge of the contractual relationship or prospective contractual relationship between charitable causes like Ann's Heart and Class members like Plaintiff.

109. Givebutter engaged in conduct that prevented or hindered the performance of the contracts between charities and the Class by (1) automatically and surreptitiously adding Tips and processing fees to consumers' carts without affirmative consent; and (2) misrepresenting the purpose of Givebutter's Tips and processing fees as an extra donation to the charity of choice.

110. Given the deceptive, unfair, and otherwise unlawful nature of Givebutter's actions, Givebutter lacked justification for its conduct.

111. Givebutter intended to prevent or hinder performance of the contracts between charities and the Classes, including Plaintiff's contract. As a result, Plaintiff and the Class were injured.

112. Givebutter's conduct as described herein substantially caused the harm inflicted on

24

*2026-02968-TT*

Plaintiff and the Class and was a significant factor in the breach of the contracts between Plaintiff and the Class and the respective charities with which they contracted.

## COUNT IV
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Classes)

113.    Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

114.    By means of Defendant's wrongful conduct as alleged herein, Defendant knowingly assessed fees upon Plaintiff and members of the Classes that are unfair, unconscionable, and oppressive.

115.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes. In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Classes.

116.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Classes.

117.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

118.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to retain the benefits it received, and is still receiving, without justification, from the imposition of processing fees and tips on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

119.    The financial benefits derived by Defendant rightfully belong to Plaintiff and the Classes. Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds collected by Defendant. A

25

*2026-02968-TT*

constructive trust should be imposed upon all wrongful or inequitable sums received by Defendant traceable to Plaintiff and the members of the Classes.

120. Plaintiff and the Classes have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Declaring Givebutter's policies and practices as described herein to be wrongful, unfair, and unconscionable;

2. Restitution of all amounts paid to Givebutter by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

3. Disgorgement of the ill-gotten gains derived by Givebutter from its misconduct;

4. Actual damages in an amount according to proof;

5. Treble damages pursuant to applicable law and in an amount according to proof;

6. Punitive and exemplary damages;

7. Pre-judgment interest at the maximum rate permitted by applicable law;

8. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Dated: March 30, 2026                    Respectfully submitted,

                                         **KALIELGOLD PLLC**

*2026-02968-TT*

s/ Justin J. Swofford
Justin J. Swofford (PA ID #334768)
(supervising conduct pursuant to C.C.R.C.P. 1025.1)
*jswofford@kalielgold.com*
Jeffrey D. Kaliel (to be admitted *pro hac vice*)
*jkaliel@kalielpllc.com*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783

Sophia G. Gold (to be admitted *pro hac vice*)
*sgold@kalielgold.com*
Amanda J. Rosenberg (to be admitted *pro hac vice*)
*arosenberg@kalielgold.com*
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

*Attorneys for Plaintiff and the Proposed Classes*

27

*2026-02968-TT*

## COURT OF COMMON PLEAS OF CHESTER COUNTY
## CIVIL ACTION

| | |
|---|---|
| WHITNEY MCCLINTOCK, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GIVEBUTTER, INC.,<br><br>Defendant. | Civil Action No. _____<br><br>Type of Pleading:<br><br>**CLASS ACTION COMPLAINT**<br><br>Counsel of Record<br><br>Justin J. Swofford (PA ID #334768)<br><br>**KALIELGOLD PLLC**<br>1100 15th Street NW, 4th Floor<br>Washington, DC 20005<br>Telephone: (202) 350-4783<br>Email: jswofford@kalielgold.com<br><br>**TRIAL BY JURY DEMANDED**<br>**AS TO ALL TRIABLE COUNTS** |

## VERIFICATION

I, Justin J. Swofford, counsel for Plaintiff in the above-captioned action, verify that the statements made in this Class Action Complaint are true and correct to the best of my knowledge, information, and belief, and that this verification is made with the knowledge, permission, and consent of Plaintiff. I make this verification for the purpose of assuring the Court of the verification of the facts in this Class Action Complaint. The verification of Plaintiff will be substituted shortly.

The undersigned understands that the statements herein are made subject to penalties set forth in 18 Pa. C.S.A. Section 4904.

Dated: March 30, 2026

_s/ Justin J. Swofford_
Justin J. Swofford
Attorney for Plaintiff and the Proposed Classes

28

*2026-02968-TT*